1   NEAL S. SALISIAN, SBN 240277
    neal.salisian@salisianlee.com
2   GLENN R. COFFMAN, SBN 305669
    glenn.coffman@salisianlee.com
3   JARED T. DENSEN, SBN 325164
    jared.densen@salisianlee.com
4   **SALISIAN | LEE LLP**
    550 South Hope Street, Suite 750
5   Los Angeles, California 90071-2924
    Telephone:   (213) 622-9100
6   Facsimile:    (800) 622-9145

7   MARISA D. POULOS (SBN 197904)
    marisa.poulos@balboacapital.com
8   **BALBOA CAPITAL CORPORATION**
    575 Anton Boulevard, 12th Floor
9   Costa Mesa, California 92626
    Tel: (949) 399-6303
10
    Attorneys for Plaintiff
11  AMERIS BANK d/b/a BALBOA CAPITAL CORPORATION

12

13

14              THE UNITED STATES DISTRICT COURT

15          FOR THE CENTRAL DISTRICT OF CALIFORNIA

16

17  AMERIS BANK, a Georgia state-          Case No. 8:24-cv-00095-JVS(KESx)
    chartered banking corporation, doing
18  business as BALBOA CAPITAL           [Assigned to the Hon. James V. Selna]
    CORPORATION,
19                                        **BALBOA CAPITAL
                     Plaintiff,           CORPORATION'S MOTION FOR
20                                        DEFAULT JUDGMENT AGAINST
              vs.                         DEFENDANTS**
21
    MONTANTE PLASTIC SURGERY &            Complaint Filed:   January 16, 2024
22  AESTHETICS, LLC, a Virginia Limited   Trial Date:        None
    Liability Company; STEVEN
23  MONTANTE, an individual; SHELLY
    MONTANTE, an individual,
24
                     Defendants.
25

26

27

28

                                         ─────────────────────────────

TO THE COURT, ALL PARTIES, AND ATTORNEYS OF RECORD:

PLEASE TAKE NOTICE that on June 10, 2024, at 1:30 p.m., or as soon thereafter as the matter may be heard, in Courtroom 10C of the 411 West 4th Street, Santa Ana, California 92701-4516, the Honorable James V. Selna presiding, plaintiff Ameris Bank, doing business as Balboa Capital Corporation ("Plaintiff" or "Balboa") will, and hereby does, apply for an entry of default judgment pursuant to Federal Rules of Civil Procedure Rule 55 and Local Rules 55-1, 55-2, and 55-3, against defendants Montante Plastic Surgery & Aesthetics, LLC, a Virginia limited liability company ("Montante"), Steven Montante, an individual ("Steven"), and Shelly Montante, an individual ("Shelly") (collectively, "Defendants"), for a judgment amount of **$115,006.60**.

PLEASE TAKE FURTHER NOTICE that Balboa seeks a default judgment against Defendants in the total amount of $115,006.60, as Balboa has established (a) a sum certain due and owing by Defendants to Balboa pursuant to the Equipment Financing Agreements entered into by Defendants and Balboa; (b) that Defendants are not in military service and are neither minors or incompetent persons; and (c) costs and attorneys' fees are properly awardable.

//
//
//
//
//
//
//
//
//
//
//

2

PLEASE TAKE FURTHER NOTICE that this motion is based on this Notice of Motion, the supporting Memorandum of Points and Authorities, the supporting declarations of Jared T. Densen and Don Ngo, and the exhibits attached thereto, the pleadings and papers filed in this action, and upon such further briefing, authorities, and argument submitted to the Court prior to, or during, the hearing on this matter.

DATED: April 26, 2024

SALISIAN | LEE LLP

By: _____

Jared T. Densen
Neal S. Salisian
Glenn R. Coffman

Attorneys for Plaintiff
AMERIS BANK d/b/a BALBOA CAPITAL CORPORATION

MOTION FOR DEFAULT JUDGMENT
CASE NO. 8:24-cv-00095-JVS(KESx)

## **TABLE OF CONTENTS**

I.    INTRODUCTION AND RELEVANT FACTS ................................................. 1

    A.    Breach of Equipment Financing Agreement No. 1. ............................ 1

    B.    Breach of Equipment Financing Agreement No. 2. ........................... 3

    C.    Attorneys' Fees and Costs ...................................................... 4

    D.    Default Judgment Motion ....................................................... 5

II.    LEGAL ARGUMENT ........................................................................ 6

    A.    Plaintiff Will Be Highly Prejudiced If Its Default Judgment Motion Is Denied. ........................................................... 7

    B.    Plaintiff Has A High Likelihood Of Success On The Merits Of Its Substantive Claims And Its Complaint Is Sufficiently Pled ................. 9

    C.    The Sum Of Money At Stake Favors An Entry Of A Default Judgment Against Defendant ................................................... 13

    D.    There Are No Material Facts That Are Reasonably In Dispute. ......... 14

    E.    Defendants' Defaults Are Not The Result Of Excusable Neglect ....... 17

    F.    Policy Concerns Favor Default Judgment In This Matter. ................. 19

    G.    Plaintiff Has Proven Its Damages. ...................................... 20

III.    CONCLUSION .......................................................................... 23

1

# <u>TABLE OF AUTHORITIES</u>

**CASES**

*Acoustics, Inc. v. Trepte Constr. Co.*,
    14 Cal.App.3d 887, 916 (1971)................................................................9

*Draper v. Coombs*,
    792 F.2d 915, 924 (9th Cir. 1986)........................................................17

*Educational Serv., Inc. v. Maryland State Board for Higher Education*,
    710 F.2d 170, 176 (4th Cir. 1983)........................................................18

*Eitel v. McCool*,
    782 F.2d 1470, 1471-72 (9th Cir. 1986).................6, 7, 9, 13, 14 17

*Geddes v. United Fin. Group*,
    559 F.2d 557, 560 (9th Cir. 1977)......................................................9, 14

*Landstar Ranger, Inc. v. Parth Enters, Inc.*,
    725 F.Supp.2d 916, 921 (C.D. Cal. 2010) .............................................15

*McKnight v. Webster*,
    499 F.Supp. 420, 424 (E.D. PA 1980) .................................................18

*NewGen, LLC v. Safe Cig, LLC*,
    804 F.3d 606, 616 (9th Cir. 2016)..................................................17, 19

*O'Connor v. State of Nevada*,
    27 F.3d 357, 364 (9th Cir. 1994)..........................................................18

*Pena v. Seguros La Comercia, S.A.*,
    770 F.2d 811, 814 (9th Cir. 1985).........................................................19

*Penpower Tech, Ltd. v. S.P.C. Tech.*,
    627 F. Supp. 2d 1083 (N.D. Cal. 2008) .................................13, 14, 19

*PepsiCo, Inc. v. Cal. Sec. Cans*,
    238 F. Supp. 2d 1172, 1177 (C.D. Cal. 2002). ..................................7, 9

*Reichert v. Gen. Ins. Co.*,
    68 Cal.2d 822, 830 (1968)....................................................................9

*Shanghai Automation Instrument Co. Ltd. v. Kuei*,
    194 F.Supp.2d 995, 1005 (N.D. Cal. 2001) ........................................18

2

*Walters v. Statewide Concrete Barrier, Inc.*,
   No. C 04-2559 JSW, 2006 WL 2527776, at *4 (N.D. Cal. Aug. 30, 2006) ......... 13

**STATUTES**

Code of Civil Procedure § 1620 ................................................................. 9

Code of Civil Procedure § 3300 ................................................................. 9

Fed. R. Civ. P. 55 .................................................................................... 6

**OTHER AUTHORITIES**

RESTATEMENT 2d. CONTRACTS § 235(2) ................................................. 9

3

**MEMORANDUM OF POINTS AND AUTHORITIES**

## I.    INTRODUCTION AND RELEVANT FACTS

Plaintiff Ameris Bank, a Georgia state-chartered banking corporation, doing business as Balboa Capital Corporation ("Plaintiff" or "Balboa") submits the instant Motion for Default Judgment against defendants Montante Plastic Surgery & Aesthetics, LLC, a Virginia limited liability company ("Montante"), Steven Montante, an individual ("Steven"), and Shelly Montante, an individual ("Shelly") (collectively, "Defendants").

### A.    Breach of Equipment Financing Agreement No. 1.

This action involves a claim for damages by Balboa against Defendants for the breach of the written Equipment Financing Agreement No. 355015-000 ("EFA No. 1"), and the breach of the corresponding personal guaranty of that agreement. [*See* Declaration of Don Ngo ("Ngo Decl."), ¶3, Exh. A.]

Specifically, Balboa, on the one hand, and Montante, and Steven and Shelly, on the other, entered into EFA No. 1 on or about March 30, 2021.  [*See id*.]  Under the terms of EFA No. 1, Balboa loaned to Montante the sum of $78,440.00, in order to finance equipment for its business ("Collateral No. 1").  [*See id*.]

Concurrent with the execution of EFA No. 1, and in order to induce Balboa to enter into EFA No. 1 with Montante, Steven and Shelly each personally guaranteed, in writing, the payment of the then-existing and future indebtedness due and owing to Balboa under the terms of EFA No. 1 ("Guaranty No. 1").  [*See id*., ¶4, Exh. A.]  Balboa relied on such Guaranty No. 1 to agree to finance Collateral No. 1 for Montante's business.  [*See id*.]

Under EFA No. 1, Montante was required to make six (6) monthly payments of $99.00, and sixty (60) monthly payments of $1,739.14 beginning on April 29, 2021.  [*See id*., ¶5, Exh. B.]  The last payment received by Balboa was credited toward the payment due for October 29, 2023.  [*See id*.]  Therefore, on November 29, 2023, Montante breached EFA No. 1, and Steven and Shelly each breached

1

Guaranty No. 1, by failing to make the monthly payment due on that date, and thus, both have remained continuously in default.  [*See id.*]

At the time of Defendants' default, in addition to the late charges in the sum of $313.05, there remained thirty-five (35) monthly payments in the amount of $1,739.14, for a total of $61,182.95, due to Balboa.  [*See id.*, ¶6.]

Pursuant to the "Default and Remedies" section on page 3 of EFA No. 1, in the event of a default, Balboa may: "… (c) accelerate and declare all sums due and to become due hereunder immediately due and payable, all future payments discounted at 3% as calculated by us …"  [*See id.*, ¶7.]  Balboa's calculation of the 3% discount is made pursuant to a present-value ("PV") accounting formula that is calculated to discount each future monthly accelerated payment down to what the present value would in today's dollar figure.  [*See id.*]  For example, a payment owed exactly one year from today would be discounted by the full 3%, whereas earlier payments would be discounted by less, and further payments would be discounted by more.  [*See id.*]  Based upon this formula, Balboa calculated that the amount due totaled $58,813.38.  [*See id.*]

Following the date of default and after the commencement of this Action, Defendants made two (2) further monthly payment in full for November 29, 2023 and December 29, 2023.  [*See id.*, ¶8.]  As such, Balboa has credited Defendants in the amount of $3,478.28, and subtracted that total from the amount sought by way of this Motion, thus totaling **$55,335.10** remaining owed to Balboa.  [*See id.*] Defendants have since failed to make further payments.  [*See id.*]

In addition, based on the amount due of $55,335.10, Balboa is entitled to prejudgment interest at the statutory rate of ten percent (10%) per annum, from November 29, 2023, the date of breach, to June 10, 2024, the date noticed for the hearing of this Motion for Default Judgment ("Default Motion"), for a total interest amount of **$2,941.04**, accruing at a rate of **$15.16 per day**, until the entry of

MOTION FOR DEFAULT JUDGMENT
CASE NO. 8:24-cv-00095-JVS(KESx)

judgment.  [*See id.*, ¶9; *see also* Declaration of Jared T. Densen ("Densen Decl."), ¶¶5-6.]

### B.    Breach of Equipment Financing Agreement No. 2.

This action also involves a claim for damages by Balboa against Defendants for the breach of the written Equipment Financing Agreement No. 355015-001 ("EFA No. 2"), and the breach of the corresponding personal guaranty of that agreement.  [*See* Ngo Decl., ¶11, Exh. C.]

Specifically, Balboa, on the one hand, and Montante, and Steven and Shelly, on the other, entered into EFA No. 2 on or about March 31, 2021.  [*See id.*]  Under the terms of EFA No. 2, Balboa loaned to Montante the sum of $64,200.00, in order to finance equipment for its business ("Collateral No. 2").  [*See id.*]

Concurrent with the execution of EFA No. 2, and in order to induce Balboa to enter into EFA No. 2 with Montante, Steven and Shelly each personally guaranteed, in writing, the payment of the then-existing and future indebtedness due and owing to Balboa under the terms of the EFA No. 2 ("Guaranty No. 2").  [*See id.*, ¶12, Exh. D.]  Balboa relied on such Guaranty No. 2 to agree to finance Collateral No. 2 for Montante's business.  [*See id.*]

Under EFA No. 2, Montante was required to make six monthly payments of $99.00, and sixty (60) monthly payments of $1,421.22, beginning on June 14, 2021.  [*See id.*, ¶13, Exh. F.]  The last payment received by Balboa was credited toward the payment due for November 14, 2023.  [*See id.*]  Therefore, on December 14, 2023, Montante breached EFA No. 2, and Steven and Shelly breached Guaranty No. 2, by failing to make the monthly payment due on that date, and thus, both have remained continuously in default.  [*See id.*]

At the time of Defendants' default, in addition to the late charges in the sum of $255.82, there remained thirty-five (35) monthly payments in the amount of $1,421.22, for a total of $49,998.52, due to Balboa.  [*See id.*, ¶14.]

Pursuant to the "Default and Remedies" section on page 3 of EFA No. 2, in the event of a default, Balboa may: "… (c) accelerate and declare all sums due and to become due hereunder immediately due and payable, all future payments discounted at 3% as calculated by us …" [*See id*., ¶15.] Balboa's calculation of the 3% discount is made pursuant to a present-value ("PV") accounting formula that is calculated to discount each future monthly accelerated payment down to what the present value would in today's dollar figure. [*See id*.] For example, a payment owed exactly one year from today would be discounted by the full 3%, whereas earlier payments would be discounted by less, and further payments would be discounted by more. [*See id*.] Based upon this formula, Balboa calculated that the amount due totaled $48,062.11. [*See id*.]

Following the date of default and after the commencement of this Action, Defendants made one (1) further monthly payment in full for December 14, 2023 and one (1) partial for January 14, 2024 for $100.50. [*See id*., ¶16.] As such, Balboa has credited Defendants in the amount of $1,521.72, and subtracted that total from the amount sought by way of this Motion, thus totaling **$46,540.39** remaining owed to Balboa. [*See id*.] Defendants have since failed to make further payments. [*See id*.]

In addition, based on the amount due of $46,540.39, Balboa is entitled to prejudgment interest at the statutory rate of ten percent (10%) per annum, from November 14, 2023, the date of breach, to June 10, 2024, the date noticed for the hearing of this Default Motion, for a total interest amount of **$2,282.25**, accruing at a rate of **$12.75 per day**, until the entry of judgment. [*See id*., ¶17; *see also* Densen Decl., ¶¶8-9.]

**C.    Attorneys' Fees and Costs**

Pursuant to Paragraph 20 of EFA No. 1 and EFA No. 2 Balboa is entitled to recover its attorneys' fees and costs from Defendant. [*See* Densen Decl., ¶¶7, 10, 13, and 16 .] The amount of reasonable attorneys' fees is fixed by Local Rule 55-3,

4

in the sum of **$3,813.40** for EFA No. 1 and **$3,392.42** for EFA No. 2.  [*See id*.]
Balboa has incurred **$702.00**, in recoverable costs - $405 for filing of the
Complaint, $99.00 for service upon Montante, $99.00 for service upon for Steven,
and $99.00 for service upon Shelly.  [*See id*.]

### D.   Default Judgment Motion

Balboa's Default Motion satisfies the procedural requirements of Local Rule
55-1 and 55-2, and Federal Rule of Civil Procedure 55(b).  Balboa filed its
Complaint and case-initiating documents on January 16, 2024.  [*See* Dkts. 1-4.]
Montante was properly served on January 25, 2024, Steven and Shelly were both
served on March 15, 2024, pursuant to Federal Rule of Civil Procedure 4.  [*See*
Dkt. 10, 16-17.]  On March 6, 2024, Balboa filed its Request for Clerk to Enter
Default against Montante ("Default Entry Request"), on April 24, 2024 Balboa filed
its Default Entry Request against Steven and Shelly, and the Clerk entered the
default against Montante on March 7, 2024, and against Steven Shelly on April 25,
2024.  [*See* Dkts. 12-13, 18-19.]

Defendant are not minors or incompetent persons, nor are Defendants
currently in the military service or otherwise exempt from a default judgment under
the Servicemembers Civil Relief Act ("SCRA").  [*See* Densen Decl., ¶4, **Exh. F**.]

Moreover, this Court has subject matter jurisdiction over the instant action.
The amount in controversy, as alleged in the Complaint and as set forth herein,
exceeds $75,000.  [*See* Dkt. 1.]  Plaintiff Balboa was and still operates as a
California corporation, with its principal place of business in Orange County,
California.  [*See* Dkt. 1, ¶1; *see also* Densen Decl., ¶11.]  Balboa is also now a
wholly owned subsidiary of Ameris Bank, and operating as a division of Ameris
Bank, a Georgia state-chartered banking corporation, and accordingly, Balboa is a
citizen of the State of California, as well as the State of Georgia, via its parent
company, Ameris Bank.  [*See id*.]

Defendant Montante is a Virginia limited liability company, with its principal place of business in Richmond County, Virginia. [*See id*., ¶12.] Upon information and belief, none of Montante's members, directors, and/or officers, including defendants Steven and Shelly, are resident of Georgia or California. [*See id*., Exh. H.] Steven and Shelly are residents of the State of Virginia. [*See* Dkt. 1, 16-17.] As such, there exists complete diversity amongst the parties. [*See id*., ¶13.]

As set forth below, a default judgment should be entered against the Defendant since Balboa satisfies all seven factors under *Eitel*. Moreover, Balboa has adequately proven its damages. Thus, Balboa respectfully requests that this Court grant its request for a default judgment against Defendant in the amount of **$115,006.60**.

## II.    **LEGAL ARGUMENT**

"When a party against whom a judgment for affirmative relief is sought has failed to plead or otherwise defend," the Court may enter a judgment of default upon Plaintiff's application after an entry of default. *See* Fed. R. Civ. P. 55. Local Rule 55 sets forth the procedural requirements that must be satisfied by a party moving for a default judgment. Balboa's Motion has satisfied such requirements.

Here, Balboa filed its Complaint and case-initiating documents on January 16, 2024. [*See* Dkts. 1-4.] Montante was properly served on January 25, 2024, Steven and Shelly were both served on March 15, 2024, pursuant to Federal Rule of Civil Procedure 4. [See Dkt. 10, 16-17.] On March 6, 2024, Balboa filed its Default Entry Request against Montante, on April 24, 2024 Balboa filed its Default Entry Request against Steven and Shelly, and the Clerk entered the default against Montante on March 7, 2024, and against Steven Shelly on April 25, 2024. [See Dkts. 12-13, 18-19.]

Defendant are not minors or incompetent persons, nor are Defendants currently in the military service or otherwise exempt from a default judgment under

the SCRA.  [*See* Densen Decl., ¶4, Exh. F.]  Additionally, Defendants are not residents of California or Georgia.  [*See id*.]

The Ninth Circuit follow the seven *Eitel* factors in deciding whether to enter a default judgment:

> (1) the possibility of prejudice to the plaintiff; (2) the merits of plaintiff's substantive claim; (3) the sufficiency of the complaint; (4) the sum of money at stake in the action; (5) the possibility of a dispute concerning material facts; (6) whether the default was due to excusable neglect; and (7) the strong policy underlying the Federal Rules of Civil Procedure favoring decisions on the merits.

*Eitel v. McCool*, 782 F.2d 1470, 1471-72 (9th Cir. 1986).  A plaintiff need not prove that all seven factors weigh in its favor, as courts *may* consider these factors in their discretion on whether to enter a default judgment.  *See id*.

Here, the underlying facts in this action show that all seven of the *Eitel* factors weigh in Balboa's favor, and thus, supports the entry of default judgment.

A. **Plaintiff Will Be Highly Prejudiced If Its Default Judgment Motion Is Denied.**

A situation in which a plaintiff will be without any other recourse or recovery should its default judgment application be denied qualifies as prejudice.  *See PepsiCo, Inc. v. Cal. Sec. Cans*, 238 F. Supp. 2d 1172, 1177 (C.D. Cal. 2002).

Here, Balboa has submitted its Motion for Default Judgment as a last resort due to Defendant's deliberate unwillingness to accept responsibility for its actions or even acknowledge Balboa's allegations.

The fact remains that Balboa, pursuant to EFA No. 1, financed Collateral No. 1 for Defendants, with Defendants agreeing to make six (6) monthly payments of $99.00, and sixty (60) monthly payments of $1,739.14, thirty-five (35) monthly payments in the amount of $1,739.14, in addition to the late charges in the sum of $313.05, for a total of $61,182.95, still remained due to Balboa at the time of Defendant's default.  [*See* Ngo Decl., ¶¶5-6, Exh. B.]

Pursuant to the "Defaults and Remedies" section of page 3 of EFA No. 1, Balboa applies a 3% PV discount to all accelerated payments. [*See id*., ¶7.] Based upon this accounting formula, Balboa calculated that the amount due total $58,813.38. [*See id*.]

Furthermore, following the date of default, Defendants made two (2) further monthly payment in full for November 29, 2023 and December 29, 2023. [*See id*., ¶8.]  As such, Balboa has credited Defendants in the amount of $3,478.28, and subtracted that total from the amount sought by way of this Motion, thus totaling **$55,335.10** remaining owed to Balboa. [*See id*.]  Defendants have since failed to make further payments. [*See id*.]

Additionally, Balboa, pursuant to EFA No. 2, financed Collateral No. 2 for Defendant, with Defendant agreeing to make six (6) monthly payments of $99.00, and sixty (60) monthly payments of $1,421.22, thirty-five (35) monthly payments in the amount of $1,421.22, in addition to late charges in the sum of $255.82, for a total of $49,998.52, still remained due to Balboa at the time of Defendant's default. [*See* Ngo Decl., ¶¶13-14, Exh. E.]

Pursuant to the "Defaults and Remedies" section of page 3 of EFA No. 1, Balboa applies a 3% PV discount to all accelerated payments. [*See id*., ¶15.] Based upon this accounting formula, Balboa calculated that the amount due total $48,062.11. [*See id*.]

Furthermore, following the date of default, Defendants made one (1) further monthly payment in full for December 14, 2023 and one (1) partial for January 14, 2024 for $100.50. [*See id*., ¶16.]  As such, Balboa has credited Defendants in the amount of $1,521.72, and subtracted that total from the amount sought by way of this Motion, thus totaling **$46,540.39** remaining owed to Balboa. [*See id*.] Defendants have since failed to make further payments. [*See id*.]

Balboa has made demands for its monies from Defendant and under the Guaranty, all of which Defendant has failed to pay back. [*See id*., ¶¶10, 18.]

Balboa filed its Complaint in this action to recover the monies owed on it, but Defendant have been unwilling to participate in, or otherwise acknowledge, the litigation.  Balboa's Motion for Default Judgment is its final option for an attempt at recovery, and without the Court granting the default judgment, Balboa will be prejudiced and be denied its right to a judicial resolution of its presented claims. *See PepsiCo*, 238 F.Supp.2d at 1177.

Moreover, if Balboa's Motion for Default Judgment is denied, it will suffer a significant loss due to no fault of its own, and Defendant will obtain a significant windfall of over $115,000.00.  Not only will the deliberate nonaction by Defendant and their continued stalling techniques be unjustly rewarded, but Balboa will effectively be penalized for its procedurally proper demands for the return of its monies available through the court system's proper channels.

Balboa will be substantially prejudiced, especially with no other available recourse, should its Motion for Default Judgment be denied, and thus, further supports the Default Judgment against Defendant to be granted by this Court.

**B.    Plaintiff Has A High Likelihood Of Success On The Merits Of Its Substantive Claims And Its Complaint Is Sufficiently Pled.**

"The general rule of law is that upon default[,] the factual allegations of the complaint, except those relating to the amount of damages, will be taken as true." *Geddes v. United Fin. Group*, 559 F.2d 557, 560 (9th Cir. 1977).  Courts often consider the second (merits of the claim) and third (sufficiency of the complaint) factors under *Eitel* together.  *See PepsiCo*, 238 F.Supp.2d at 1177.

The elements for a breach of contract are: (1) the existence of a contract, (2) performance by the plaintiff of its obligations under the contract, (3) breach of the contract by the defendant, and (4) resulting damages proximately caused by the defendant's breach of contract.  *Reichert v. Gen. Ins. Co.*, 68 Cal.2d 822, 830 (1968); *Acoustics, Inc. v. Trepte Constr. Co.*, 14 Cal.App.3d 887, 916 (1971); *see also* Civ. Code §§ 1620, 3300; and RESTATEMENT 2d. CONTRACTS § 235(2).

9

Here, all elements are met. Specifically, Balboa, on the one hand, and Montante, and Steven and Shelly, on the other, entered into EFA No. 1, under which Balboa loaned to Montante the sum of $78,440.00, in order to finance Collateral No. 1 for its business. [*See* Ngo Decl., ¶3, Exh. A.]

Concurrent with the execution of EFA No. 1, and in order to induce Balboa to enter into EFA No. 1 with Montante, Steven and Shelly each personally guaranteed, in writing, the payment of the then-existing and future indebtedness due and owing to Balboa under the terms of EFA No. 1 via Guaranty No. 1. [*See id*., ¶4, Exh. A.] Balboa relied on such Guaranty No. 1 to agree to finance Collateral No. 1 for Montante's business. [*See id*.]

Under EFA No. 1, Montante was required to make six (6) monthly payments of $99.00, and sixty (60) monthly payments of $1,739.14 beginning on April 29, 2021. [*See id*., ¶5, Exh. B.] The last payment received by Balboa was credited toward the payment due for October 29, 2023. [*See id*.] Therefore, on November 29, 2023, Montante breached EFA No. 1, and Steven and Shelly each breached Guaranty No. 1, by failing to make the monthly payment due on that date, and thus, both have remained continuously in default. [*See id*.]

At the time of Defendants' default, in addition to the late charges in the sum of $313.05, there remained thirty-five (35) monthly payments in the amount of $1,739.14, for a total of $61,182.95, due to Balboa. [*See id*., ¶6.]

Pursuant to the "Default and Remedies" section on page 3 of EFA No. 1, in the event of a default, Balboa may: "… (c) accelerate and declare all sums due and to become due hereunder immediately due and payable, all future payments discounted at 3% as calculated by us …" [*See id*., ¶7.] Balboa's calculation of the 3% discount is made pursuant to a PV accounting formula that is calculated to discount each future monthly accelerated payment down to what the present value would in today's dollar figure. [*See id*.] For example, a payment owed exactly one year from today would be discounted by the full 3%, whereas earlier payments

10

would be discounted by less, and further payments would be discounted by more.
[*See id*.]  Based upon this formula, Balboa calculated that the amount due totaled
$58,813.38.  [*See id*.]

Following the date of default and after the commencement of this Action,
Defendants made two (2) further monthly payment in full for November 29, 2023
and December 29, 2023.  [*See id*., ¶8.]  As such, Balboa has credited Defendants in
the amount of $3,478.28, and subtracted that total from the amount sought by way
of this Motion, thus totaling **$55,335.10** remaining owed to Balboa.  [*See id*.]
Defendants have since failed to make further payments.  [*See id*.]

There is no doubt, and it cannot be disputed that: (1) Balboa and Defendants
entered into EFA No. 1; (2) Steven and Shelly each personally guaranteed, in
writing, the payment of the then-existing and future indebtedness due and owing to
Balboa under the terms of EFA No. 1; (3) Montante received the loan in order to
finance Collateral No. 1 for its business; (4) Defendants ceased making payments
pursuant to EFA No. 1; and (5) Balboa has suffered and continues to suffer
damages due to Defendants' continued nonpayment.  Thus, Balboa has a
substantially high likelihood in succeeding on the merits of its claims.  In fact, no
known defenses exist to any of the material facts.

As to EFA No. 2, here, all elements are equally met.  Specifically, Balboa, on
the one hand, and Montante, on the other, entered into EFA No. 2, under which
Balboa loaned to Montante the sum of $64,200.00, in order to finance Collateral
No. 2 for its business.  [*See* Ngo Decl., ¶11, Exh. C.]

Concurrent with the execution of EFA No. 2, and in order to induce Balboa
to enter into EFA No. 2 with Montante, Steven and Shelly each personally
guaranteed, in writing, the payment of the then-existing and future indebtedness due
and owing to Balboa under the terms of the EFA No. 2 via Guaranty No. 2.  [*See
id*., ¶12, Exh. D.]  Balboa relied on such Guaranty No. 2 to agree to finance
Collateral No. 2 for Montante's business.  [*See id*.]

Under EFA No. 2, Montante was required to make six monthly payments of $99.00, and sixty (60) monthly payments of $1,421.22, beginning on June 14, 2021. [*See id*., ¶13, Exh. F.]  The last payment received by Balboa was credited toward the payment due for November 14, 2023.  [*See id*.]  Therefore, on December 14, 2023, Montante breached EFA No. 2, and Steven and Shelly breached Guaranty No. 2, by failing to make the monthly payment due on that date, and thus, both have remained continuously in default.  [*See id*.]

At the time of Defendants' default, in addition to the late charges in the sum of $255.82, there remained thirty-five (35) monthly payments in the amount of $1,421.22, for a total of $49,998.52, due to Balboa.  [*See id*., ¶14.]

Pursuant to the "Default and Remedies" section on page 3 of EFA No. 2, in the event of a default, Balboa may: "… (c) accelerate and declare all sums due and to become due hereunder immediately due and payable, all future payments discounted at 3% as calculated by us …"  [*See id*., ¶15.]  Balboa's calculation of the 3% discount is made pursuant to a PV accounting formula that is calculated to discount each future monthly accelerated payment down to what the present value would in today's dollar figure.  [*See id*.]  For example, a payment owed exactly one year from today would be discounted by the full 3%, whereas earlier payments would be discounted by less, and further payments would be discounted by more. [*See id*.]  Based upon this formula, Balboa calculated that the amount due totaled $48,062.11.  [*See id*.]

Following the date of default and after the commencement of this Action, Defendants made one (1) further monthly payment in full for December 14, 2023 and one (1) partial for January 14, 2024 for $100.50.  [*See id*., ¶16.]  As such, Balboa has credited Defendants in the amount of $1,521.72, and subtracted that total from the amount sought by way of this Motion, thus totaling **$46,540.39** remaining owed to Balboa.  [*See id*.]  Defendants have since failed to make further payments.  [*See id*.]

There is no doubt, and it cannot be disputed that: (1) Balboa and Defendants entered into EFA No. 2; (2) Steven and Shelly each personally guaranteed, in writing, the payment of the then-existing and future indebtedness due and owing to Balboa under the terms of EFA No. 2; (3) Montante received the loan in order to finance Collateral No. 2 for its business; (4) Defendants ceased making payments pursuant to EFA No. 2; and (5) Balboa has suffered and continues to suffer damages due to Defendants' continued nonpayment.  Thus, Balboa has a substantially high likelihood in succeeding on the merits of its claims.  In fact, no known defenses exist to any of the material facts.

**C.**      **The Sum Of Money At Stake Favors An Entry Of A Default Judgment Against Defendant.**

As a general rule, courts factor the sum of money at stake on a case-by-case basis, and in relation to the other factors influencing whether to enter default judgment.  *See Eitel*, 782 F.2d at 1472 (default judgment was denied where plaintiff was seeking $3 million in damages *and* the parties disputed material facts).  This requires the court to assess whether the recovery sought is proportional to the harm caused by defendant's conduct.  *See Walters v. Statewide Concrete Barrier, Inc.*, No. C 04-2559 JSW, 2006 WL 2527776, at *4 (N.D. Cal. Aug. 30, 2006) ("[i]f the sum of money at issue is reasonably proportionate to the harm caused by the defendant's actions, then default judgment is warranted").

In *Penpower Tech, Ltd. v. S.P.C. Tech.*, 627 F. Supp. 2d 1083 (N.D. Cal. 2008), despite reasoning that plaintiff's request for $677,075.37 in treble damages, $500,000.00 in punitive damages, $100,000.00 in statutory damages, attorneys' fees of $16,497.00, and costs of $2,005.00, were "speculative" and weighed against default judgment, the court nevertheless granted plaintiff's default judgment.

Here, Balboa seeks compensatory damages pursuant to EFA No. 1 in the amount of **$55,335.10**; prejudgment interest from November 29, 2023, the date of breach, to June 10, 2024, the date noticed for the hearing of this Default Motion, in

the amount of **$2,941.04**, plus **$15.16 per day** until the entry of judgment; statutory attorneys' fees, in the amount of **$3,813.40**; and costs in the amount of **$702.00**. [*See* Densen Decl., ¶¶5-7, <u>Exh. G</u>.]  The damages sought are contractually-based and arise out of the clear terms and obligations of EFA No. 1; the prejudgment interest was calculated at the statutory rate of ten percent (10%) per annum; and the attorneys' fees requested are fixed by Local Rule 55-3.  [*See id.*, ¶7.]

Additionally, Balboa seeks compensatory damages pursuant to EFA No. 2 in the amount of **$46,540.39**; prejudgment interest from December 14, 2023, the date of breach, to June 10, 2024, the date noticed for the hearing of this Default Motion, in the amount of **$2,282.25**, plus **$12.75 per day** until the entry of judgment; statutory attorneys' fees, in the amount of **$3,392.42**.  [*See* Densen Decl., ¶¶8-10.] The damages sought are contractually-based and arise out of the clear terms and obligations of EFA No. 2; the prejudgment interest was calculated at the statutory rate of ten percent (10%) per annum; and the attorneys' fees requested are fixed by Local Rule 55-3.  [*See id.*, ¶8.]

As such, the sum of money sought is reasonable and far from speculative.  It is also substantially less than the $3 million sought in *Eitel*, in which this sum, <u>and other factors</u>, weighed in the favor of denying default judgment.  And it is also substantially less than the roughly $1.3 million sought in *Penpower Tech*, in which default judgment was granted, despite the sum of money being deemed "speculative."

Thus, the sum of money sought in this action weighs in the favor of granting default judgment, especially in the light of the other seven *Eitel* factors, and due to the certainty and reasonableness of the sum.

### D.    <u>There Are No Material Facts That Are Reasonably In Dispute.</u>

"The general rule of law is that upon default[,] the factual allegations of the complaint, except those relating to the amount of damages, will be taken as true." *See Geddes, supra*, 559 F.2d at 560.  Where a plaintiff's complaint is well-pleaded

and the defendants make no effort to properly respond, the likelihood of disputed facts is very low.  *See Landstar Ranger, Inc. v. Parth Enters, Inc.*, 725 F.Supp.2d 916, 921 (C.D. Cal. 2010).

As thoroughly detailed in Section II.B., *supra*, there are no material facts that are reasonably in dispute.

Here, specifically, Balboa, on the one hand, and Montante, and Steven and Shelly, on the other, entered into EFA No. 1 on or about March 30, 2021.  [*See* Ngo Decl., ¶3, Exh. A.]  Under the terms of EFA No. 1, Balboa loaned to Montante the sum of $78,440.00, in order to finance Collateral No. 1 for its business.  [*See id*.]

Concurrent with the execution of EFA No. 1, and in order to induce Balboa to enter into EFA No. 1 with Montante, Steven and Shelly each personally guaranteed, in writing, the payment of the then-existing and future indebtedness due and owing to Balboa under the terms of EFA No. 1 via Guaranty No. 1.  [*See id*., ¶4, Exh. A.]  Balboa relied on such Guaranty No. 1 to agree to finance Collateral No. 1 for Montante's business.  [*See id*.]

Under EFA No. 1, Montante was required to make six (6) monthly payments of $99.00, and sixty (60) monthly payments of $1,739.14 beginning on April 29, 2021.  [*See id*., ¶5, Exh. B.]  The last payment received by Balboa was credited toward the payment due for October 29, 2023.  [*See id*.]  Therefore, on November 29, 2023, Montante breached EFA No. 1, and Steven and Shelly each breached Guaranty No. 1, by failing to make the monthly payment due on that date, and thus, both have remained continuously in default.  [*See id*.]

At the time of Defendants' default, in addition to the late charges in the sum of $313.05, there remained thirty-five (35) monthly payments in the amount of $1,739.14, for a total of $61,182.95, due to Balboa.  [*See id*., ¶6.]

Pursuant to the "Defaults and Remedies" section of page 3 of EFA No. 1, Balboa applies a 3% PV discount to all accelerated payments.  [*See id*., ¶7.]  Based

upon this accounting formula, Balboa calculated that the amount due total $58,813.38. [*See id*.]

Following the date of default and after the commencement of this Action, Defendants made two (2) further monthly payment in full for November 29, 2023 and December 29, 2023. [*See id*., ¶8.] As such, Balboa has credited Defendants in the amount of $3,478.28, and subtracted that total from the amount sought by way of this Motion, thus totaling **$55,335.10** remaining owed to Balboa. [*See id*.] Defendants have since failed to make further payments. [*See id*.]

And as for EFA No. 2, here, specifically, Balboa, on the one hand, and Montante, and Steven and Shelly, on the other, entered into EFA No. 2 on or about March 31, 2021. [*See id*., ¶11, Exh. C.] Under the terms of EFA No. 2, Balboa loaned to Montante the sum of $64,200.00, in order to finance Collateral No. 2 for its business. [*See id*.]

Concurrent with the execution of EFA No. 2, and in order to induce Balboa to enter into EFA No. 2 with Montante, Steven and Shelly each personally guaranteed, in writing, the payment of the then-existing and future indebtedness due and owing to Balboa under the terms of the EFA No. 2 via Guaranty No. 2. [*See id*., ¶12, Exh. D.] Balboa relied on such Guaranty No. 2 to agree to finance Collateral No. 2 for Montante's business. [*See id*.]

Under EFA No. 2, Montante was required to make six monthly payments of $99.00, and sixty (60) monthly payments of $1,421.22, beginning on June 14, 2021. [*See id*., ¶13, Exh. F.] The last payment received by Balboa was credited toward the payment due for November 14, 2023. [*See id*.] Therefore, on December 14, 2023, Montante breached EFA No. 2, and Steven and Shelly breached Guaranty No. 2, by failing to make the monthly payment due on that date, and thus, both have remained continuously in default. [*See id*.]

MOTION FOR DEFAULT JUDGMENT
CASE NO. 8:24-cv-00095-JVS(KESx)

At the time of Defendants' default, in addition to the late charges in the sum of $255.82, there remained thirty-five (35) monthly payments in the amount of $1,421.22, for a total of $49,998.52, due to Balboa.  [*See id*., ¶14.]

Pursuant to the "Defaults and Remedies" section of page 3 of EFA No. 1, Balboa applies a 3% PV discount to all accelerated payments.  [*See id*., ¶15.]  Based upon this accounting formula, Balboa calculated that the amount due total $48,062.11.  [*See id*.]

Following the date of default and after the commencement of this Action, Defendants made one (1) further monthly payment in full for December 14, 2023 and one (1) partial for January 14, 2024 for $100.50.  [*See id*., ¶16.]  As such, Balboa has credited Defendants in the amount of $1,521.72, and subtracted that total from the amount sought by way of this Motion, thus totaling **$46,540.39** remaining owed to Balboa.  [*See id*.]  Defendants have since failed to make further payments.  [*See id*.]

Defendant cannot dispute any of the facts in any way or make any reasonable arguments surrounding any of the material facts in this action.  If anything, Defendant's refusal to participate in, or even acknowledge the litigation, is evidence that no such defense exists.

### E.    Defendants' Defaults Are Not The Result Of Excusable Neglect.

Excusable neglect is not found where a defendant who was properly served simply ignored the deadline to respond.  *See NewGen, LLC v. Safe Cig, LLC*, 804 F.3d 606, 616 (9th Cir. 2016) (adding that defendant's counsel contacting plaintiff's counsel after default had been entered did not constitute to "excusable neglect").  In fact, courts have required some showing of good faith by the defaulted defendant to constitute "excusable neglect."  *See Eitel*, 782 F.2d at 1471-72 (defendant's failure to answer was held to be excusable neglect in light of ongoing settlement negotiations); *Draper v. Coombs*, 792 F.2d 915, 924 (9th Cir. 1986) (finding excusable neglect where defendant filed an answer past the deadline and on the

same day that the motion for default judgment was filed); *O'Connor v. State of Nevada*, 27 F.3d 357, 364 (9th Cir. 1994) (excusable neglect was found where defendant has good faith of a timely answer); *Educational Serv., Inc. v. Maryland State Board for Higher Education*, 710 F.2d 170, 176 (4th Cir. 1983) (excusable neglect found where defendant had appeared in the action and opposed a request for a preliminary injunction in which the party had set forth its defenses); *McKnight v. Webster*, 499 F.Supp. 420, 424 (E.D. PA 1980) (excusable neglect found where defendant sought an extension of time to respond, but a default judgment was sought in the interim).

Where the defendants "were properly served with the Complaint, the notice for the entry of default, as well as documents in support of the instant [default judgment application]," favors this factor for the entry of default judgment. *See Shanghai Automation Instrument Co. Ltd. v. Kuei*, 194 F.Supp.2d 995, 1005 (N.D. Cal. 2001).

Here, Defendant failed to make any showing whatsoever that their unwillingness to participate in the litigation stemmed from, or was in any way due to, excusable neglect. Jeremy A. Ball was properly served via personal service, as the agent for service of process for Montante. [*See* Dkt. 10.] Steven and Shelly were properly served by substituted service by leaving copies with Chloe Adams, daughter/co-occupant. [*See* Dkt. 16-17.]

Further, Defendants were additionally served at the same address thereafter with the Default Entry Requests. [*See* Dkt. 12, 18.] Defendants have not yet made any appearance in the action, and thus, have not made any effort to answer, defend, or otherwise participate, in this action.

As detailed above, courts have found for excusable neglect only in cases in which a defendant makes good faith showing that the defendant attempts to participate in the litigation to address and defend the allegations set forth against the defendant. Declining to respond to a complaint after proper service (even in the

case where defendant's counsel contacts plaintiff's counsel after the entry of
default), does not warrant a finding of excusable neglect.  *See NewGen*, 804 F.3d at
616.

Here, Defendants have failed to acknowledge their wrongdoings and the
allegations they face, even in the slightest degree.  Instead, Defendants have
blatantly ignored Balboa's Complaint and all other papers filed thereafter.  Rather,
Defendant's course of action in response to Balboa's Complaint, or the apparent
lack thereof, is intentional, and thus, would not constitute excusable neglect.

### F.    Policy Concerns Favor Default Judgment In This Matter.

Although courts have expressed that as a general rule, policy favors decisions
on the merits, cases should be decided on its merits only when *reasonably possible*.
*See Pena v. Seguros La Comercia, S.A.*, 770 F.2d 811, 814 (9th Cir. 1985)
(emphasis added).  The policy preference to decide a case on its merits is not
dispositive, and thus, does not preclude a court from granting a default judgment.
*See Penpower Tech, Ltd.*, 627 F.Supp.2d at 1093 (defendants' failure to respond to
a Complaint makes a case decision on its merits impractical, if not, impossible).

Here, even the policy concerns to decide a case on its merits favor Balboa to
grant Balboa's request for a default judgment.  As detailed in II.E., *supra*,
Defendant has made it abundantly clear that they will not participate in this
litigation, or even acknowledge the instant action.  Defendant has deliberately
chosen a course of action to simply ignore Balboa and its claims against them,
including their own liability.  Thus, the Court's decision will not be based on the
merits of this case since there is no reasonable possibility at this point given
Defendant's refusal to participate in this litigation.

Moreover, policy concerns certainly do not weigh in favor of rewarding
Defendant for their unwillingness to account for their liability to Balboa, and the
extremely prejudicial windfall they would receive should their deliberate silence
and stalling techniques be rewarded, at Balboa's expense.  *See* Section II.A., *supra*.

19

### G.    **Plaintiff Has Proven Its Damages.**

Under EFA No. 1, Montante was required to make six (6) monthly payments of $99.00, and sixty (60) monthly payments of $1,739.14 beginning on April 29, 2021.  [*See id*., ¶5, Exh. B.]  The last payment received by Balboa was credited toward the payment due for October 29, 2023.  [*See id*.]  Therefore, on November 29, 2023, Montante breached EFA No. 1, and Steven and Shelly breached Guaranty No. 1, by failing to make the monthly payment due on that date, and thus, both have remained continuously in default.  [*See id*.]

At the time of Defendants' default, in addition to the late charges in the sum of $313.05, there remained thirty-five (35) monthly payments in the amount of $1,739.14, for a total of $61,182.95, due to Balboa.  [*See id*., ¶6.]

Pursuant to the "Defaults and Remedies" section of page 3 of EFA No. 1, Balboa applies a 3% PV discount to all accelerated payments.  [*See id*., ¶7.]  Based upon this accounting formula, Balboa calculated that the amount due total $58,813.38.  [*See id*.]

Following the date of default and after the commencement of this Action, Defendants made two (2) further monthly payment in full for November 29, 2023 and December 29, 2023.  [*See id*., ¶8.]  As such, Balboa has credited Defendants in the amount of $3,478.28, and subtracted that total from the amount sought by way of this Motion, thus totaling **$55,335.10** remaining owed to Balboa.  [*See id*.]  Defendants have since failed to make further payments.  [*See id*.]

In addition, based on the amount due of $55,335.10, Balboa is entitled to prejudgment interest at the statutory rate of ten percent (10%) per annum, from November 29, 2023, the date of breach, to June 10, 2024, the date noticed for the hearing of this Default Motion, for a total interest amount of **$2,941.04**, accruing at a rate of **$15.16 per day**, until the entry of judgment.  [*See id*., ¶9; *see also* Densen Decl., ¶¶5-7.]

Pursuant to Paragraph 20 of EFA No. 1, Balboa is entitled to recover its attorneys' fees and costs from Defendant.  [*See* Densen Decl., ¶7.]  The amount of reasonable attorneys' fees is fixed by Local Rule 55-3, in the sum of **$3,813.40**.  [*See id*.]  Balboa has incurred **$702.00**, in recoverable costs.  [*See id*.]

Additionally, under EFA No. 2, Montante was required to make six (6) monthly payments of $99.00, and sixty (60) monthly payments of $1,421.22, beginning on June 14, 2021.  [*See* Ngo Decl., ¶13, <u>Exh. E</u>.]  The last payment received by Balboa was credited toward the payment due for November 14, 2023.  [*See id*.]  Therefore, on December 14, 2023, Montante breached EFA No. 2, and Steven and Shelly breached Guaranty No. 2, by failing to make the monthly payment due on that date, and thus, both have remained continuously in default.  [*See id*.]

At the time of Defendants' default, in addition to the late charges in the sum of $255.82, there remained thirty-five (35) monthly payments in the amount of $1,421.22, for a total of $49,998.52, due to Balboa.  [*See id*., ¶14.]

Pursuant to the "Defaults and Remedies" section of page 3 of EFA No. 1, Balboa applies a 3% PV discount to all accelerated payments.  [*See id*., ¶15.]  Based upon this accounting formula, Balboa calculated that the amount due total $48,062.11.  [*See id*.]

Following the date of default and after the commencement of this Action, Defendants made one (1) further monthly payment in full for December 14, 2023 and one (1) partial for January 14, 2024 for $100.50.  [*See id*., ¶16.]  As such, Balboa has credited Defendants in the amount of $1,521.72, and subtracted that total from the amount sought by way of this Motion, thus totaling **$46,540.39** remaining owed to Balboa.  [*See id*.]  Defendants have since failed to make further payments.  [*See id*.]

In addition, based on the amount due of $46,540.39, Balboa is entitled to prejudgment interest at the statutory rate of ten percent (10%) per annum, from

December 14, 2023, the date of breach, to June 10, 2024, the date noticed for the hearing of this Default Motion, for a total interest amount of **$2,282.25**, accruing at a rate of **$12.75 per day**, until the entry of judgment. [*See id.*, ¶17; *see also* Densen Decl., ¶¶8-9.]

Pursuant to Paragraph 20 of EFA No. 2, Balboa is entitled to recover its attorneys' fees and costs from Defendant. [*See* Densen Decl., ¶10.] The amount of reasonable attorneys' fees is fixed by Local Rule 55-3, in the sum of **$3,392.42**. [*See id.*]

Altogether, this totals out to **$115,006.60** (as of June 10, 2024), calculated as follows:

### EFA No. 1:

|   |   |   |
|---|---|---|
| - | Amount owed: | $ 55,335.10 |
| - | Prejudgment Interest: | $ 2,941.04 |
| - | Attorneys' Fees: | $ 3,813.40 |

### EFA No. 2:

|   |   |   |
|---|---|---|
| - | Amount owed: | $ 46,540.39 |
| - | Prejudgment Interest: | $ 2,282.25 |
| - | Attorneys' Fees: | $ 3,392.42 |

### Costs:

|   |   |   |
|---|---|---|
| - | Recoverable Costs: | $ 702.00 |
| - | **Total** | **$115,006.60** |

//
//
//
//
//
//
//

## III.   **CONCLUSION**

Based on Balboa's Complaint, Default Judgment Motion, and all supporting papers, Balboa respectfully requests that the Court grant its Default Judgment Motion against Defendants, in the total amount of **$115,006.60**.

DATE: April 26, 2024                  SALISIAN | LEE LLP

By: _____
        Jared T. Densen
        Neal S. Salisian
        Glenn R. Coffman

Attorneys for Plaintiff
AMERIS BANK d/b/a BALBOA CAPITAL
CORPORATION